DAVID G. TORRES-SIEGRIST State Bar No. 220187

TORRES⏐SIEGRIST LAW, APC

440 East Huntington Drive
Suite 300
Arcadia, CA 91006
Phone:      (626) 277-5330
Facsimile:  (626) 446-8927
*dgts@icloud.com*

**Attorneys for Plaintiff BENJAMIN TORRES**


# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT


| | |
|---|---|
| BENJAMIN TORRES, an individual<br>          Plaintiff,<br><br>          vs.<br><br>COUNTY OF LOS ANGELES, a public entity; SHERIFF ROBERT LUNA, individually and in his official capacity; Does 1-20<br><br>          Defendants. | **Case No.:**<br><br>**COMPLAINT FOR DAMAGES**<br> 1.  **FIRST AMENDMENT CLAIM (42 U.S.C. SECTION 1983)**<br><br> 2.  <u>**MONELL**</u> **MUNICIPAL LIABILITY (POLICY, PRACTICE, CUSTOM) (42 U.S.C. SECTION 1983)**<br><br><br><br><br><br>**DEMAND FOR JURY TRIAL** |


1

**COMPLAINT**

COMES NOW Plaintiff BENJAMIN TORRES for his Complaint against the Defendants COUNTY OF LOS ANGELES, SHERIFF ROBERT LUNA and DOES 1-20, alleges as follows:

## JURISDICTION AND VENUE

1. Jurisdiction is based upon 28 U.S.C. §1331 and 28 U.S.C. §1343.

2. Venue is proper in the United States District Court, Central District of California pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3. Plaintiff BENJAMIN TORRES is currently employed as a Captain for the County of Los Angeles' Sheriff's Department.

4. At all times mentioned herein, Defendant COUNTY OF LOS ANGELES was, and is, a political subdivision of the State of California, operating pursuant to its Charter. Defendant COUNTY is a "public agency" as defined by Government Code section 3501(c).

5. At all times mentioned herein, the Los Angeles County Sheriff's Department is now, and at all times herein mentioned was, the agency of the County charged with maintaining peace and order in the community. In its capacity as a peace keeping agency, Defendant COUNTY OF LOS ANGELES' Department is responsible for hiring, maintaining and promoting employees in the capacity of peace officers whose function is to protect as well as serve the public at large.

6. At all times mentioned herein, Defendant SHERIFF ROBERT LUNA was, and is, the elected Sheriff of the County as set forth in Article XI, Sections 1(b) and 4(c) of the Constitution of the State of California.  Defendant LUNA is sued herein both in his official and individual capacity.

7. At all times mentioned herein, Defendants designated Does 1 - 20 were the agents, servants and employees of the COUNTY and/or other Defendants and in doing the things hereinafter alleged were acting within the scope of their

authority, under color of law, with the permission and consent of the COUNTY and/or such other Defendants. Plaintiff will amend this Complaint to allege the true names and capacities of Does 1 - 20, inclusive, when ascertained.

## FACTUAL ALLEGATIONS

8. This case involves the unconstitutional practices, policies and customs of the COUNTY and its SHERIFF in failing to promote peace officers within its ranks simply on the basis of refusing to remove a pre-existing "station tattoo."

9. Plaintiff, an exemplary peace officer with an impeccable record has a "station tattoo" on his inner calf.

10. Plaintiff has never engaged in or condoned any policy violations or crimes against fellow employees or the public.

11. Plaintiff has had his station tattoo for approximately 20 years and has always performed his duties with respect for human life, the rights of his fellow COUNTY employees, and the rights of all community members he serves.

12. Plaintiff's personnel packet evidences an exemplary career and the promotions earned throughout his tenure with the department as a result of his dedication, integrity, honesty and hard work.

13. Plaintiff received his station tattoo as a mark of recognition from his peers 20 years ago.

14. David Piquette, a great judge of character, approached plaintiff regarding inking the station tattoo.

15. Mr. Piquette was plaintiff's academy classmate, a dedicated marine, and, most importantly, a great father.

16. Given the plaintiff's admiration for Mr. Piquette, plaintiff was honored to receive the station tattoo 20 years ago: an outward expression of comradery and friendship similar to tattoos that members of the armed forces routinely obtain designating their branch of the military and their respective units.

TORRES ⏐ SIEGRIST

COMPLAINT

17. Plaintiff's station tattoo is never visible to anyone while he is on-duty.

18. Plaintiff's station tattoo has nothing to do with any gang or illegal activity.

19. Plaintiff's tattoo is an outward expression/symbol of his dedication to the station and department where he has worked for approximately 28 years.

20. It serves as a memorial to the experiences that have shaped his law enforcement career.

21. Plaintiff's tattoo honors the countless lives lost to unnecessary violence, horrific traffic accidents, and the many children taken too soon.

22. The station tattoo is not a tribute to Century Station or any allegiance to anyone, anything or criminal enterprise.

23. It honors the loss of plaintiff's friends who stood beside him during many of these tragic events.

24. The tattoo serves as a memorial plaintiff wears every day in memory of his friends who shared the same station tattoo and died too soon.

25. It honors the men and women whose names are on the memorial hallway walls and inside the briefing room at Century Station.

26. Ultimately, the station tattoo is a tribute for plaintiff to two of his dearest friends: David Piquette and Jerry Ortiz, who shared the same tattoo but tragically lost their lives in the line of duty.

27. Now, based on policies, practices and procedures, plaintiff has been denied promotion to Commander over the past several years because he refuses to remove or alter his station tattoo.

## CHRONOLOGY OF EVENTS

28. On March 19, 2021, plaintiff was promoted to Captain, having served as Acting Captain for the previous two years.

29. On January 24, 2022, an email was sent out inviting eligible Captains to apply for Commander positions.

COMPLAINT

TORRES † SIEGRIST

30. By September 20, 2022, the plaintiff's application for the Commander position was received.

31. On December 16, 2022, plaintiff received a 100% appraisal rating for the Commander role.

32. On March 28, 2023, another email was sent to eligible Captains to apply for the Commander position.

33. On April 12, 2023, the Commander promotions were announced, and it was noted that none of the promoted individuals had station tattoos.

34. One of the newly appointed Commanders was later arrested on alleged child sexual charges.

35. The following day, on April 13, 2023, another email was sent out for eligible Captains to apply for Commander positions, which seemed unusual given the recent application process.

36. Plaintiff's application for the Commander position was accepted on April 19, 2023.

37. On May 9, 2024, plaintiff had a scheduled interview at the Hall of Justice for the Commander position.

38. On May 18, 2023, SHERIFF LUNA sent an email ordering personnel to participate and cooperate in interviews aimed at identifying deputies with station tattoos.

39. On June 23, 2023, plaintiff received another 100% appraisal rating for the Commander role.

40. On December 18, 2023, an email was sent to eligible Captains to apply for the Commander position.

41. On January 9, 2024, plaintiff met with Assistant Sheriff Holly Francisco to discuss why he had not been promoted.

42. Plaintiff inquired if he was still a viable candidate for promotion, and she assured him he was and encouraged him to apply again.

5

COMPLAINT

43. On February 12, 2024, an email was sent out by Lt. Calvin Mah, briefing about Deputy Cliques/Subgroups and included a set of questions.

44. The next day, on February 13, 2024, newly promoted Commander Reyes sent an email instructing to "hold off" on asking any questions regarding subgroups/cliques, for reasons unknown.

45. On February 21, 2024, another email was sent to eligible Captains to apply for Commander positions.

46. On May 22, 2024, plaintiff was interviewed for the Commander position.

47. The following day, on May 23, 2024, plaintiff was called in by the Internal Affairs Bureau for an interview regarding the Century Station tattoo investigation.

48. On June 21, 2024, an email listed Band 1 of eligible Captains for promotion to Commander, and plaintiff was included in Band 1.

49. Plaintiff received another 100% appraisal rating for the Commander role

50. However, on June 5, 2024, at 2:53 PM, the Commander promotions were announced via email.

51. John P. McDonald, Robert L. Jones, and Edmundo Torres were all promoted to Commander, and all had station tattoos.

52. McDonald had the same station tattoo as the plaintiff.

53. It was evidence during the Commander interview process that if plaintiff did not remove or alter his station tattoo he would not be promoted.

54. McDonald, Jones and Torres had their station tattoos removed/altered prior to being promoted.

55. Following this second interview, Plaintiff filed a formal grievance under the collective bargaining agreement that was never reviewed by the appropriate supervisors and remains unresolved without recourse to the present day.

56. Plaintiff contacted representatives from his labor union, the Los Angeles Professional Peace Officers Association (PPOA).

COMPLAINT

57. Union representatives expressed confusion over why Plaintiff's grievance had not been addressed and remained in limbo.

58. In December 2024, Plaintiff again submitted an application for the position of Commander via the Los Angeles County website.

59. Plaintiff was scheduled for an interview on Friday, March 7, 2025.

60. Plaintiff received an emailed interview itinerary identifying the interview panel as consisting of three members of the executive staff:

    a. Assistant Sheriff and Chief Financial and Administrative Officer (ASCFAO) Gerardo Pinedo;

    b. Assistant Sheriff Jason Skeen; and

    c. Assistant Sheriff Myon Johnson.

61. However, when the interview took place, ASCFAO Pinedo was not present.

62. The interview proceeded, and Plaintiff again performed exceptionally well.

63. During the interview, Plaintiff was once more asked whether he currently has or has ever had a station tattoo.

64. Plaintiff responded affirmatively, stating, "Yes, I have one."

65. At the conclusion of the interview, Plaintiff was asked whether he had any additional comments or questions.

66. Plaintiff responded: "What am I doing wrong? I'm the only candidate who has interviewed three times, while all the others—approximately 16 captain candidates at the time—were promoted after just one interview."

67. Assistant Sheriff Johnson replied, "Today is not the time to discuss that."

68. Plaintiff continued: "After my last failed promotion attempt, I requested meetings with Assistant Sheriff Holly Francisco (now retired) and Sheriff Luna. Both requests were denied."

69. Assistant Sheriff Johnson instructed Plaintiff to schedule an appointment with him to discuss any further concerns, and the interview concluded.

70. On April 25, 2025, the LASD issued an email announcing the latest Commander promotions.

71. Seven additional captains were promoted.

72. Each of the seven had interviewed only once; some had held the rank of captain for less than a year.

73. At least one of the newly promoted individuals had a station tattoo that was merely altered to comply with the Sheriff's directive.

74. Adding to the confusion, Plaintiff received—on the same day as the promotion announcement—another "Application Advisement" letter for Commander, sent via both U.S. Mail and LASD email.

75. This was perplexing given that there are still captains, including Plaintiff, who remain on the current availability list from which the recent promotions were made.

76. Plaintiff, who refuses to remove or alter his station tattoo, continues to be passed over for promotion.

77. Clearly, the COUNTY of Los Angeles Sheriff's Department refuses to promote plaintiff as a result of plaintiff's refusal to remove or alter his station tattoo.

///

///

///

COMPLAINT

## CLAIM 1

## 42 U.S.C. SECTION 1983 FIRST AMENDMENT CLAIM AS TO DEFENDANT SHERIFF ROBERT LUNA AND DOES 1-20

78. Plaintiff re-alleges and hereby incorporates the paragraphs above as though fully set forth herein.

79. Title 42 U.S.C. § 1983 states in pertinent part: "Every person who, under color of [law] subjects, or causes to be subjected, any person of the United States … to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law [or equity]."

80. The First Amendment to the United States Constitution protects the rights of public employees to freedom of speech and expression.

81. Moreover, as the Ninth Circuit in *Anderson v. City of Hermosa Beach*, 621 F. 3d 1051 (2010), provided "The tattoo itself, the process of tattooing, and even the business of tattooing are not expressive conduct but purely expressive activity fully protected by the First Amendment." Id.

82. At all times relevant to this Complaint, plaintiff by maintaining his Station Tattoo was exercising his First Amendment rights to:

   a. Free Speech

   b. Freedom of Expression

      and

   c. Freedom of Association.

83. Defendant LUNA, and Does 1-20 under color of law, violated 42 USC Section 1983 by depriving Plaintiff, of his rights guaranteed by the First Amendment of the United States Constitution by impeding, preventing and/or failing to promote plaintiff on the basis that he would not remove and/or alter his station tattoo.

84. Plaintiff is entitled to compensatory damages, punitive damages, attorney fees under 42 U.S.C. § 1988, and all applicable law, and any other such relief as the Court deems just and appropriate.

## CLAIM 2

## **MONELL (VIOLATION OF FIRST AMENDMENT RIGHTS BY UNCONSTITUTIONAL POLICY, PRACTICE, AND/OR CUSTOM) 42 U.S.C. SECTION 1983 FIRST AMENDMENT CLAIM AS TO DEFENDANT COUNTY.**

85. Plaintiff re-alleges and hereby incorporates the paragraphs above as though fully set forth herein.

86. Section 1983 of Title 42 of the United States Code ("Section 1983") creates a cause of action against every person who, under color of state law, deprives an individual of rights secured by the Constitution. Section 1983 creates a right of action to challenge constitutional deprivations resulting from the official policy of a municipality.

87. At all times relevant to this Complaint herein, the COUNTY had a policy, practice and/or custom of failing to promote personnel who have a Station Tattoo and refuse to remove/alter the tattoo.

88. By reason of these policies and practices of Defendant COUNTY, and DOES 1-20, Plaintiff suffered a constitutional violation of his First Amendment Rights to Free Speech, Freedom of Expression and Freedom of Association.

89. The aforementioned policies and practices of Defendants was the moving force that caused Plaintiff's constitutional First Amendment rights to be violated.

90. Defendants COUNTY, LUNA and DOES 1-20, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the unconstitutional policies, practices and customs alleged in this Complaint.

91. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiff, and other individuals similarly situated.

92. By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendants DOES 1-20 acted with intentional and reckless indifference as to Plaintiff's constitutional rights.

93. Furthermore, the policies, practices, and customs and callous disregard for the First Amendment Rights of Plaintiff which are maintained, and still tolerated by Defendants COUNTY and Does 1-20 were affirmatively linked to and were a significantly influential force behind the constitutional injuries suffered by Plaintiff related to his rights to speech, expression and association.

94. By reason of the acts and omissions of Defendants COUNTY and Does 1-20, Plaintiff incurred damages as stated elsewhere herein.

95. Accordingly, Defendants COUNTY and DOES 1-20 each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983 as well as attorney's fees per 42 U.S.C. § 1988.

///
///
///

**WHEREFORE, PLAINTIFF PRAYS AS FOLLOWS:**

AS TO ALL CLAIMS

1. For special damages;

2. For general damages;

3. For costs of suit herein;

4.  For Statutory Damages;

5. For attorney's fees, including litigation expenses, based on all causes of action affording statutory attorney's fees: 42 U.S.C.§ 1983 per 42 U.S.C.§ 1988.

6. For punitive/exemplary damages as to the individual defendants according to proof at trial;

and

7. For such other and further relief as the Court deems just and proper.

**Date: May 6, 2025**

**TORRES ┼ SIEGRIST**

By:_____

**DAVID G. TORRES-SIEGRIST**
**Attorneys for Plaintiff**

## DEMAND FOR JURY TRIAL

Additionally, Plaintiff respectfully demands a jury trial of the present case pursuant to the U.S. Constitution, the California Constitution and applicable California State and Federal Law.

**Date: May 6, 2025**

**TORRES┤SIEGRIST**

By:_____
**DAVID G. TORRES-SIEGRIST**
**Attorneys for Plaintiff**